## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **A. James Firth,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No.** |
| ) | |
| **v.** ) | |
| ) | |
| **Mike Johanns,** ) | <u>**JURY TRIAL DEMANDED**</u> |
| **U.S. Department of Agriculture** ) | |
| **1400 Independence Ave., S.W.** ) | |
| **Washington, DC 20250** ) | |
| ) | |
| **The Secretary of the** ) | |
| **Department of Agriculture** ) | |
| ) | |
| **(sued in his official capacity),** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

### <u>COMPLAINT</u>
### (Retaliation and Sex Discrimination)

**COMES NOW** the Plaintiff, A. James Firth, and in support of his causes of action

alleges as follows:

### <u>Parties</u>

1.      A. James Firth ("Firth") is a male resident of the state of Viginia; from

1992 to 2004, he was the Chief, Export Operations Branch, in the Farm Service

Administration's Commodity Procurement Policy and Analysis Division.

2.      Defendant Mike Johanns is the Secretary of the United States Department

of Agriculture ("the Agency"), which is located in Washington, D.C.

3.      Johanns is being sued only in his official capacity as the highest official

of the Agency.

**Jurisdiction and Venue**

5.      The Court has jurisdiction of the case pursuant to 29 U.S.C. §701, et. seq., 29 C.F.R. §1614.101, and 28 U.S.C. §1331, 1343(a).

6.      Venue properly lies in this Court because the controversy involves Defendant's discriminatory and retaliatory treatment of Firth, with regard to his employment and his applications for employment at the Department of Agriculture, in the District of Columbia.

**Exhaustion of Administrative Remedies**

7.      More than 180 days have passed since Firth filed his first formal complaint of discrimination with the Agency's EEO office.  In addition, Firth has received a final agency decision in that case, EEOC Case No. 570-2006-00037X (Agency Case No. FSA 2005-00101), and is filing this suit within ninety days of the issuance of that Final Agency Decision.

8.      After his first Complaint, Firth has filed others, all asserting a continuing pattern of retaliation against Firth that is related to the facts of the first Complaint.

9.      Many of Firth's complaints are now more than 180 days old. By law, Firth's retaliation complaint regarding the changes to his schedule, the denial of short-term medical flexiplace, and improper discipline, as part of an ongoing campaign of retaliation for prior EEO complaints, need not be endlessly exhausted administratively. Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992) (quoting Malhotra v. Cotter & Co., 885 F.2d 1305, 1312 (7th Cir. 1989), superseded on other grounds by statute as stated in Rush v. McDonald's Corp., 966 F.2d 1104, 1119-20 (7th Cir. 1992)); Keeley v. Small, 2003 U.S. Dist. LEXIS 26649 (D.D.C.)(Bates, J.).

10.     By virtue of the foregoing facts, Firth is now free to exercise his private right of action in the U.S. District Court and to obtain a trial *de novo* as to all claims set forth below.

## THE FACTS SUPPORTING FIRTH 'S CLAIMS

### Firth Possesses An Outstanding Background, But Has Been Rejected For His Former Position And Other Leadership Posts

11.     Firth possesses over 25 years o f experience directing multiple agency programs.

12.     Firth is an experienced manager and leader.

13.     Firth possesses experience supervising staff, setting a direction for a team of workers, evaluating personnel, budgeting and managing financial resources.

14.     Firth is experienced in starting new major programs, creating program strategy, setting goals and implementing policy.

15.     Firth has extensive experience and knowledge with CCC commodity procurement and logistics, warehousing and storage, price support, program operations, program management, policy interpretation.

16.     Firth was responsible for the establishment of the Export Operations Branch within the FSA's Procurement & Donations Division.

17.     From 1992 to 2004, Firth served the Agency as Chief of the Export Operations Branch.

18.     On October 27, 2003, Firth received a fully successful performance appraisal.

19.     During the relevant period, Firth was rejected repeatedly in his applications for positions, despite easily meeting the qualifications required for the positions.

### Firth Voluntarily Serves As a Resolving Official in Agency EEO Cases, But Is Summarily Dismissed From Those Duties By Supervisor Bert Farrish, And Protests That Removal

20.     While serving as Chief, Export Operations Branch, Firth responded to an agency message soliciting volunteers to get training on working on management's behalf to attempt resolve a backlog of EEO cases administratively filed against the Agency.

21.     Firth served as an Agency resolving official ("ARO") for EEO cases on approximately 15 cases.

22.     In October 2003, Firth reached a resolution on management's behalf in a particular case.

23.     On October 17, 2003, Firth's ARO travel arrangements for the following Monday were suddenly cancelled.

24.     Shortly thereafter, Firth was summarily removed from performing this duty for management.

25.     Firth was later informed that termination of his ARO status was related to "management concern" regarding his settlement of a past case.

26.     Firth protested his removal.

### Firth Is Removed From His Position As Chief, Export Operations Branch; Marsh Tells Him He Is Failing To See The Signs, Which Firth Protests to An Agency EEO Counselor; Firth Settles Counselor Complaint With Marsh

27.     On October 27, 2003, Firth received a fully successful performance appraisal.

4

28.    In May 2004, Firth was informed that management intended to administratively reassign him pursuant to an alleged "reorganization."

29.    On or about August 8, 2004, Firth's new supervisor, Cleveland Marsh, remarked to Firth that he "wasn't seeing the signs" that it was time for Firth to look for another job.

30.    On August 9, 2004, Firth contacted an EEO counselor and protested that Marsh's comments reflected retaliation against him for his prior activity as a resolving official.

31.    The counselor contacted Marsh, and obtained an agreement that Firth would withdraw his complaint (which he then did), and that Marsh would discuss the basis of Firth's complaint with Firth (which he had previously been unwilling to do).

### Firth Applies For Deputy Director, Is Not Selected, And Protests

32.    On August 16, 2004, Defendant posted a vacancy announcement for the position of Deputy Director, CPPAD.

33.    Firth applied timely and made the best-qualified list for this lateral position, which represented advancement within the organization although at the same grade level.

34.    On September 15, 2004, Firth was reassigned and given the title: Assistant to the Director.

35.    Firth was not informed by management that poor performance was a factor in the reassignment.

36.    On November 5, 2004, Marsh selected Sue King, a woman rather than Firth for the position of Deputy Director.

37.    Firth possessed far superior qualifications.

5

38.     On November 12, 2004, Firth was informed that he had not been selected.

39.     King entered on duty in December 2004, and Firth became her subordinate.

40.     On December 10, 2004, Firth timely protested the non-selection for Deputy Director to the EEO counselor.

41.     On January 10, 2005, Firth received another fully successful performance appraisal.

### Firth Applies For His Prior Position, Chief, Export Operations Branch, But Is Not Selected, And Protests; The EEO Counselor Interviews Marsh Regarding The Selection For Deputy Director

42.     On January 10, 2005, Defendant posted a vacancy announcement for Firth's prior position, Chief, Export Programs Branch.

43.     Firth timely applied for the Export Programs Branch vacancy.

44.     On January 27, 2005, Marsh was interviewed by an agency EEO counselor, with regard to the Deputy Director selection.

45.     During his interview, Marsh denied any knowledge that Firth had engaged in prior EEO activity.

46.     Marsh told the counselor that he was the primary selecting official

47.     Marsh told the counselor that he selected King over Firth because of her experience, the interview process, and her overall performance.

48.     Marsh said he made his selection based on both the interview results and his own views.

49.     On February 4, 2005, an EEO counselor spoke with Marsh again about the Deputy Director position.  Marsh told the counselor he had selected King over Firth on account of her superior expertise.

50.     On February 18, 2005, the EEO counselor spoke with Marsh again about the Deputy Director position.

<u>Firth Is Denied Selection To His Former Position, Chief, Export Operations Branch, In Favor of Lisa Brown; Firth Protests</u>

51.     In February 2005, King served on a panel for purposes of selecting a Chief, Export Operations Branch.

52.     King was aware of prior EEO activity by Firth at the time.

53.     King rated Firth as a poor candidate.

54.     On February 24, 2005, Marsh selected Lisa Brown, a woman, over Firth for Firth's former position of Chief, Export Programs Branch.

55.     Firth's qualifications were far superior to Brown's.

56.     On February 28, 2005, Firth contacted an EEO counselor about the selection of Brown.

<u>Firth Is Denied Assignment to Acting Chief, Export Operations Branch; Firth Protests; Firth Protests The Selection of Jones And Meets With Management</u>

57.     In March 2005, Lisa Brown, the new Chief, Export Operations Branch had a medical emergency.  Acting Chiefs were subsequently appointed, but Firth was denied that opportunity.

58.     On March 30, 2005, Marsh met with an agency EEO counselor regarding the selection of Jones.

59.     On April 8, 2005, the EEO counselor met with Farrish, Marsh and Candace Thompson.

60.     During the meeting, Marsh and Candace Thompson told the counselor that Firth had been reassigned previously from the Export Programs Branch Chief

position on account of poor performance, and that they were therefore unwilling to select him for the position.

61.    On or about June 30, 2005, Firth was denied selection for Acting Chief, EOB, in favor of a much less qualified candidate from the Kansas City office.

62.    Firth protested this action to an EEO counselor.

63.    In August 2005, Farrish told the EEO counselor that he "no longer had confidence" in Firth.

64.    Firth filed a formal complaint regarding the Acting Chief selection on August 30, 2005.

<u>King Becomes Acting Director, CPPAD, And Denies Firth The Opportunity<br>To Serve As Acting Branch Chief</u>

65.    In October 2005, King became Acting Director, CPPAD.

66.    On November 11, 2005, King formally approved a 15-minute schedule adjustment in Firth's "maxiflex" work schedule, thereby confirming Firth's participation in maxiflex.

67.    On November 22, 2005, King issued an e-mail identifying five GS-13 employees who would be provided the opportunity to serve as Acting Chief, Export Programs Branch, during her absence.

68.    King was aware of Firth's prior EEO activity at the time.

69.    Firth was not among those named, and did not so serve.

<u>Sandra Wood Is Selected As Chief, Export Programs Branch</u>

70.    On February 21, 2006, the Chief, Export Programs Branch was announced as vacant again.

71.    In March or April, 2006, King selected a less qualified woman, Sandra Wood, for Chief, Export Operations Branch.

72.    King was aware that Firth had previously engaged in EEO activity at the time.

### King Denies Firth Short-Term Medical Flexiplace For The Period of Firth's Wife's Recovery From Major Surgery, And Denies Him Sick Leave As Well; Firth Protests

73.    On May 23, 2006, and after consulting with the appropriate Agency specialist, Firth executed and submitted to supervisor King, a "Flexiplace Work Agreement" form, FFAS-10, by which he requested short term medical flexiplace, for the period of May 31, 2006 to July 14, 2006, while his wife recovered from major surgery.

74.    Firth simultaneously submitted extensive paperwork supporting his request.

75.    On May 26, 2006, King denied the request for short-term medical flexiplace.

76.    King denied the request on May 26, 2006, by electronic mail, citing her lack of knowledge of the "actual work" Firth performed, her contention that he lacked "portable and measurable work," and Firth's alleged failure to provide timely delivery of work assignments she asked for on 2/9/06, 3/17/06, 3/22/06, and 5/4/06.  She further recommended that Firth "take this issue to the party/parties who have knowledge of the specific duties you perform."

77.    Firth responded that same day, seeking reconsideration, indicating that Firth was concerned about his wife's medical condition (the reason for his flexiplace request), and that he was "distraught" with the denial.  He also pointed out that other personnel had been permitted to participate in the short-term flexiplace program.

78.    King did not respond to the request for reconsideration prior to the requested start date for the flexiplace assignment.

79.    King also denied Firth use of sick leave for the time necessary absence necessitated by his wife's condition.

80.    On May 30, 2006, Firth contacted EEO counselor Joanne Scott regarding his supervisor King's denial of short term medical flexiplace, which would have allowed him to be at home while his wife recuperated from surgery, while continuing to work and not using leave.

81.    During June 2006, King prepared her affidavit in Firth's cases 2005-1123 and 2005-1086l.

82.    Therein, King stated her alleged reasons for denying Firth the temporary promotion.

83.    On June 15, 2006, King met with EEO counselor Scott regarding Firth's EEO contention regarding the denial of the short-term medical flexiplace, and the failure to select Firth for Chief, Export Operations Branch in favor of a less qualified woman-- Wood.

84.    King told Scott that she was aware of Firth's EEO activity prior to denying medical flexiplace and making the selection, but that she did not discriminate against him.

85.    King told Scott that the selectee, Wood, had limited knowledge in administering food aid policies and programs with partner agencies of FSA, but felt that such knowledge could be learned, while supervisory and communication skills were more important for the position.

Firth's Schedule Is Changed In Retaliation; Firth Is Required To Abide
Special Sign-In and Out Procedures

86.    Firth returned to work after using leave for his wife's recuperation, on
July 16, 2006.

87.    Firth had worked a flexible schedule since 1991.

88.    When King became Acting Director and Firth's supervisor in October,
2005, and after assuming that position, King reaffirmed that Firth was to work on a
"maxiflex" schedule.

89.    Then, she consistently approved Firth's specific time sheets over many
months, which were completed in exactly the same manner as the sheets she later
rejected.

90.    However, when Firth submitted his work schedule log for that first post-
leave pay period after July 16, 2006, King for the first time took the position that Firth
was completing his timesheets incorrectly and refused to approve the log by using a red
pen to cross out credit hours earned.

91.    In this manner, Firth came to learn that his maxiflex scheduling privilege
was being revoked.

92.    King never provided a valid reason for changing Firth's schedule in this
manner.

93.    Other employees on the maxiflex schedule were permitted to continue
thereon.

94.    King instructed Firth to sign in and out of the office logs
contemporaneously with coming and going from the building.

95.    Other employees were not instructed to do the same at the time when King first instructed Firth.

96.    After Firth protested being singled out in this manner, King instructed the other supervisors to instruct employees to follow the same procedures.

<u>King And Thompson Retaliatorily Impose A Fourteen Day Suspension On Firth;
Firth Opposes, Arguing That The Charges Are Retaliatory</u>

97.    King issued a proposed to suspend ("Proposal") Firth for a period of fourteen (14) calendar days, "or otherwise discipline him," for various alleged acts of alleged misconduct.

98.    Several of the contentions raised against Firth were based on the facts and circumstances that led him to initiate his EEO cases long before the Proposal was generated.

99.    King was well aware of Firth's prior cases and her own involvement therein at the time of the Proposal.

100.    One charge against Firth, which is illustrative, was that he engaged in misconduct by politely repeating a request to attend a professional conference.

101.    Another charge was that Firth gave incorrect time and attendance-related information to other employees, one of whom was the very supervisor hired to replace him on the basis of her allegedly superior managerial skills.

102.    The Proposal also accused Firth of misconduct by not using the "track changes" function in Microsoft Word to edit a document, upon first request.

103.    Another charge was that Firth failed to follow time sheet procedures that other employees had not been asked to follow.

104.    There were additional charges in the Proposal.

105.    Through counsel, Firth opposed the Proposal in writing on or about October 9, 2006, and by oral reply subsequently.

106.    In opposing the proposal, Firth showed both that many of the facts asserted by King's proposal were false, and that King was acting against Firth out of retaliatory motive.

107.    On November 15, 2006, Candace Thompson sustained most of the charges against Firth, and imposed a fourteen-day suspension.

108.    Defendant never presented any legitimate business reason either for changing Firth's work schedule in the manner undertaken, or for disciplining him in the manner it ultimately chose.

109.    The proposal and the decision implementing it were retaliatory in nature against Firth.

## Statement of Claims

**Count I:        Failure to Select for Deputy Director, Procurement & Donations
Division, On Account of Sex and Protected Activity
In Violation of Title VII and 29 C.F.R. Part 1614**

110.    Plaintiff incorporates paragraphs 1-109 by reference.

111.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. prohibits an employer from discriminating against any of his employees or applicants for employment...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this sub-chapter.

112.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. prohibits an employer from discriminating against any of his employees or applicants for employment, on account of sex.

113.    As summarized above, Defendant retaliated against Plaintiff Firth and discriminated against him based on his sex, by rejecting his application for Deputy Director, CPPAD under announcement UF 197621 CT, and instead selected Sue King, a less qualified woman, in November 2004, despite his being the best-qualified candidate, on account of his protected participation in the EEO process both as an agency RMO and by protesting his treatment by Marsh to an EEO counselor.

114.    As a result of the discrimination and retaliation imposed upon him, Firth has suffered considerable injury, both financially and emotionally.

**Count II:      Failure To Select For Chief, Export Operations Branch, Under Announcement No. UF 202356 CT, For Which Lisa Brown Was Selected, In Violation Of Title VII And 29 C.F.R. Part 1614, On Account Of Sex And Retaliation**

115.    Plaintiff incorporates paragraphs 1-114 by reference.

116.    As summarized above, Plaintiff Firth previously served Defendant as Export Operations Branch chief, the job for which he was applying, successfully for a period of approximately 12 years.

117.    As summarized above, Defendant refused to select Plaintiff Firth for Chief, Export Operations Branch under Announcement No. UF 202356 CT, for which Lisa Brown was selected.

118.    That failure to select was effected because of Firth's sex and in retaliation for Firth's protected activities.

119.    As a result of the discrimination and retaliation imposed upon him, Firth has suffered considerable injury, both financially and emotionally.

**Count III:      Failure To Select For Chief, Export Operations Branch, Under Announcement No. UF 107136 ALO, For Which Sandra Wood Was Selected, In Violation Of Title VII And 29 C.F.R. Part 1614, On Account Of Sex And Retaliation**

120.     Plaintiff incorporates paragraphs 1-119 by reference.

121.     As described above, Plaintiff Firth previously served Defendant as Export Operations Branch chief, the job for which he was applying, successfully for a period of approximately 12 years.

122.     As described above, Plaintiff Firth engaged in a variety of protected activities, which included several open EEO complaints as of March 2006.

123.     On or about March 14, 2006, Firth was denied selection to Export Operations Chief under Announcement No. UF 107136 ALO, in favor of Sandra Wood, a less qualified woman, on account of his sex and prior protected activities.

124.     As a result of the retaliation imposed upon her by way or non-selection, Firth has suffered considerable injury, both financially and emotionally.

**Count IV:      Retaliatory Denial of Short Term Medical Flexiplace, in Violation of Title VII and 29 C.F.R. Part 1614**

125.     Plaintiff incorporates paragraphs 1-124 by reference.

126.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. prohibits employers from discriminating against any of its employees or applicants for employment...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this sub-section.

127.    As summarized above, Defendant's supervisor, King, denied Firth short-term medical flexiplace (work at home) in the summer of 2006, to assist him in caring for his wife, without meritorious cause, in retaliation for his protected activities.

126.    As a result of Defendant's actions, Plaintiff was required to exhaust approximately seven weeks of leave, which should be restored to him. He has suffered considerable injury as a result of this retaliation, both financially and emotionally.

**Count V:    Retaliatory Alteration of Plaintiff's Tour of Duty, Denying Him Participation in the "Maxiflex" Program in Violation of Title VII and 29 C.F.R. 1614**

127.    Plaintiff incorporates paragraphs 1- 126 by reference.

128.    As shown above, Firth was disciplined for Failure to Follow Instructions and forced to change a convenient work schedule.

129.    He then had to change the work schedule, which was based on participation in the "Maxiflex" schedule.

130.    By forcing him to change a convenient work schedule without explanation or any legitimate business reason, just to retaliate against him, Defendant has caused Firth to suffer financial and emotional damages.

**Count VI:    Retaliatory Initiation of Disciplinary Proceedings And Imposition of a Fourteen Day Suspension, in Violation of  Title VII and 29 C.F.R. 1614**

131.    Plaintiff incorporates paragraphs 1-130 by reference.

132.    As shown above, Firth was assessed a fourteen day suspension in November 2006.

133.    The suspension was retaliatory payback for Firth's prior assertions of his rights under Title VII and 29 CFR Part 1614.

134.    By improperly suspending him, Defendant has caused Firth significant emotional and financial harm, and damage to his professional reputation and career.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff, James A. Firth, prays that the Court grant him the following relief:

(a)    A declaratory judgment that Defendant's conduct violated his rights;

(b)    Retroactive reinstatement to the position of Branch Chief, Export Operations Branch, or instatement to the position of Deputy Director, with full backpay and benefits.

(c)    Compensatory damages, in amounts to be determined by the jury in accordance with the proof at trial, for the financial (including back pay and lost income) and emotional harm caused by Defendant;

(d)    Pre-judgment and post-judgment interest;

(e)    Reasonable attorneys' fees, expenses and costs;

(f)    Posting of notices on Defendant's premises notifying employees that Defendant has violated the anti-discrimination laws, and that employees who report future violations may not be subject to retaliation;

(g)    Expungement of the suspension of November 2006 and any other adverse references relating to misconduct or discipline from his Official Personnel Folder and any and all other Agency records;

(h)    Restoration of credit hours earned but subsequently stricken by supervisor Sue King;

(i)    Reinstatement of participation in the "Maxiflex" duty-hours schedule and restoration of a convenient work schedule;

(j)    Reinstatement of lost leave; and

(k)    Such other relief as the court shall deem just and proper.

## **Jury Trial Demand**

The Plaintiff demands that this case be tried by a jury.

Respectfully submitted,

THE GOLDSMITH LAW FIRM, LLC

Leizer Z. Goldsmith  (D.C. Bar No. 419544)
5335 Wisconsin Avenue, N.W., Suite 440
Washington, D.C. 20015
Telephone: (202) 195-1506
Facsimile:   (202) 318-0798
Counsel For Plaintiff A. James Firth

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| A. James Firth<br>6606 Quinten Street<br>Falls Church, VA 22043 | Mike Johanns<br>U.S. Department of Agriculture<br>1400 Independence Ave., S.W.<br>Washington, DC 20250 |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

THE GOLDSMITH LAW FIRM, LLC
5335 WISCONSIN AVENUE, N.W.
SUITE 440
WASHINGTON, D.C.  20015

ATTORNEYS (IF KNOWN)

---

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
   Plaintiff

○ 3 Federal Question
   (U.S. Government Not a Party)

● 2 U.S. Government
   Defendant

○ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A–N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A.  Antitrust**

☐ 410 Antitrust

**○ B.  Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C.  Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
       Administrative Agency is Involved)

**○ D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

---

**○ E.  General Civil (Other)**      **OR**      **○ F.  Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
       defendant
☐ 871 IRS-Third Party 26
       USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
       of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
       Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
       Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
       Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
       Exchange
☐ 875 Customer Challenge 12 USC
       3410
☐ 900 Appeal of fee determination
       under equal access to Justice
☐ 950 Constitutionality of State
       Statutes
☐ 890 Other Statutory Actions (if
       not administrative agency
       review or Privacy Act

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multi district Litigation ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 U.S.C. 2000e et seq.

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ $75,000 +, at jury's discretion    Check YES only if demanded in complaint    JURY DEMAND:    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 12-26-06    SIGNATURE OF ATTORNEY OF RECORD    *[signature]*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.